<center>

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

</center>

| | |
|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |
| **AERO HEC ACQUISITION I, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No.** |
| **v.** ) | **23-11136-FDS** |
| ) | |
| **THOMAS BRANSFORD; PATRICIA** ) | |
| **BRANSFORD; and DENIS RICHARD** ) | |
| **MCDONOUGH, in his capacity as** ) | |
| **SECRETARY OF VETERAN AFFAIRS** ) | |
| **OF THE UNITED STATES,** ) | |
| ) | |
| **Defendants.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

<center>

**MEMORANDUM AND ORDER ON
DEFENDANTS' SPECIAL MOTION TO DISMISS**

</center>

**SAYLOR, C.J.**

This is an action for breach of contract and other violations related to a mortgage

agreement between plaintiff and assignee Aero HEC Acquisition I, LLC and Patricia Bransford.

Aero alleges that certain conditions of the mortgage and accompanying option agreement were

violated and that Patricia Bransford and her husband, Thomas Bransford, have refused to cure

those violations.

Defendants Patricia and Thomas Bransford have moved to dismiss pursuant to Mass.

Gen. Laws ch. 184, § 15(c), which allows a party to move to dismiss an action seeking an order

of *lis pendens* if the claim is frivolous.  Because plaintiff lacks the capacity to sue, defendants'

motion to dismiss will be granted and plaintiff's motions for endorsement of *lis pendens* and

memorandum and findings of *lis pendens* will be denied.

## I.     Background

### A.     Factual Background

The property at issue is located at 484 Main Street, Tisbury, Massachusetts.  (Compl. ¶ 5).

On March 25, 2019, Harriet Brownson Sayre McCord, Trustee, conveyed the property to Thomas and Patricia Bransford by quitclaim deed.  The deed was recorded with the Dukes Country Registry of Deeds on March 28, 2019.  (*Id.*).

On February 12, 2020, the Bransfords granted a $1,207,994.00 mortgage on the property to Mortgage Electronic Registration Systems, Inc., as nominee for Freedom Mortgage Corporation.  (*Id.* ¶ 6).

On December 15, 2021, Patricia Bransford granted a deed of trust to Noah, f/k/a Patch Homes, Inc., in the amount of $500,000.  (*Id.* ¶ 7).  Patricia also signed a real estate purchase option agreement with Noah.  (*Id.* ¶ 9).

On December 15, 2021, the Noah mortgage was assigned to Aero.[1]

Also on December 15, 2021, the Bransfords granted a $136,487.69 mortgage to the Secretary of Veterans Affairs.  The VA mortgage was recorded on April 7, 2022, at the Dukes County Registry of Deeds.  (*Id.* ¶ 14).

On July 5, 2022, the Noah mortgage and the assignment to Aero were recorded at the Dukes Country Registry of Deeds.  It is recorded as the third mortgage, behind the Freedom Mortgage and the VA mortgage.  (*Id.* ¶¶ 8, 16).

Also on July 5, 2022, Noah, on behalf of Aero, sent Patricia Bransford a Notice of Alleged Violation.  The notice provided as follows:

---

[1] The effective date on the assignment is December 1, 2021.  (Compl., Ex. 1-2 at 55-58).

> [Y]ou have violated the Option Agreement by (1) executing documents as the sole owner of the Property (even though you jointly hold the Property with Mr. Thomas Bransford), (2) failing to grant Noah a valid security interest in the Property, and (3) refusing to execute new documents that would grant Noah the security interests to which it is entitled.

(*Id.* Ex. 6 at 1). The notice instructed that in order to cure the violations, Patricia Bransford must "(A) obtain sole title to the Property and execute a new set of documents in your sole name"; "(B) execute, with Mr. Thomas Bransford, a new set of documents in your joint names"; or "(C) buy out Noah's interest in the Option Agreement in accordance with the terms of the Option Agreement." (*Id.* Ex. 6 at 1-2).

On February 23, 2023, Aero sent Patricia Bransford a second Notice of Alleged Violation. It stated that after the Bransfords conveyed the mortgage to the Secretary of Veterans Affairs, which was recorded on April 7, 2022, the "Noah Mortgage was recorded on July 5, 2022 and remains in third position," despite the closing instructions that indicated it "was to be a second lien" on the property. (*Id.* Ex. 7 at 2). Furthermore, it stated "The Property remains in the name of both Patricia and Thomas Bransford, yet the Noah Mortgage remains in only the name of Patricia Bransford." (*Id.* Ex. 7 at 2).

The notice outlined two alleged violations: (1) that Patricia Bransford had represented that she was the sole owner, despite owning the property with her husband, and (2) that she had failed to notify Noah about the VA mortgage that ultimately became a superior lien. (*Id.* Ex. 7 at 3, 4). It again provided an opportunity to cure the violations. (*Id.* Ex. 7 at 4-5).

### B.   Procedural Background

On April 14, 2023, Aero filed suit in Dukes County Superior Court, naming Thomas and Patricia Bransford and Denis Richard McDonough, in his capacity as Secretary of Veteran Affairs, as defendants. The complaint alleges that the Bransfords violated the Option Agreement by (1) misrepresenting that Patricia Bransford was the sole owner of the property and that Noah

had good and marketable title, free and clear of all claims; (2) refusing to cure that violation by conveying the property to Patricia Bransford alone; (3) granting the subordinate mortgage to the VA; and (4) failing to notify Noah of the VA mortgage.  (*Id.* ¶¶ 22-26).

The complaint alleges counts for breach of contract (Count 1), breach of implied covenant of good faith and fair dealing (Count 2), intentional misrepresentation (Count 3), fraud in the inducement (Count 4), and unjust enrichment (Count 5).  The complaint also seeks an equitable lien and declaratory judgment under Mass. Gen. Laws. ch. 231A, § 1 *et seq*.

On May 22, 2023, McDonough removed the case to federal court.

On May 24, 2023, Aero filed a motion for endorsement of *lis pendens* pursuant to Mass. Gen. Laws ch. 184, § 15(b) as to the property.  Also on May 24, 2023, Aero filed a motion for an order for memorandum and findings of *lis pendens*.

On June 19, 2023, the Bransford defendants filed a special motion to dismiss pursuant to Mass. Gen. Laws ch. 184, § 15(c).

## II.   **Standard of Review**

In Massachusetts, a memorandum of *lis pendens* is a notice recorded in the chain of title of real property that signifies there is a "suit pending" constituting a claim on the property.  *See Wolfe v. Gormally*, 440 Mass. 699, 702-03 (2004).  Upon the motion of a party, "if the subject matter of the action constitutes a claim of a right to title to real property or the use and occupation thereof or the buildings thereon, a justice of the court in which the action is pending shall make a finding to that effect and endorse" the memorandum.  Mass. Gen. Laws ch. 184, § 15(b).  That language is mandatory and affords judges little discretion when the action concerns an interest in real property.  *DeCroteau v. DeCroteau*, 90 Mass. App. Ct. 903, 905 (2016).

Nonetheless, there are important statutory prerequisites before a *lis pendens* memorandum may be granted.  *Id.* at 905-06.  The party seeking the memorandum must commence an underlying proceeding with a verified or certified complaint, the facts in the complaint must be true, and no material facts may be omitted.  Mass. Gen. Laws ch. 184, § 15(b).

Furthermore, under Mass. Gen. Laws ch. 184, § 15(c), a party may file a special motion to dismiss if the party believes that the action or claim underlying the *lis pendens* memorandum is frivolous.  Special motions are directed to the underlying action, rather than the memorandum for *lis pendens* itself, but the issues can be determined at the same time.  *Fafard Real Estate & Dev. Corp. v. Metro-Boston Broad., Inc.*, 345 F. Supp. 2d 147, 152 (D. Mass. 2004); Mass. Gen. Laws ch. 184, § 15(c).  The court may consider verified pleadings and affidavits in making its decision.  Mass. Gen. Laws ch. 184, § 15(c).

A court should dismiss a motion seeking a memorandum of *lis pendens* "if the court finds that the action or claim is frivolous because (1) it is devoid of any reasonable factual support; or (2) it is devoid of any arguable basis in law; or (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds."  *Id.*

In reviewing a special motion to dismiss under § 15(c), the court should apply the same standard as for a motion to dismiss.  *Padula v. Freedom Mortg. Corp.*, 2020 WL 4040725, at *3 (D. Mass. July 17, 2020).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

If the court grants the motion to dismiss, "it shall award the moving party costs and reasonable attorneys fees, including those incurred for the special motion, any motion to dissolve the memorandum of *lis pendens*, and any related discovery."  Mass. Gen. Laws ch. 184, § 15(c). The award of fees is mandatory.  *Rudnick v. QBJKL, LLC*, 2018 WL 2992987, at *3 (Mass. App. Ct. June 15, 2018) (citing § 15(c)).  "As in other fee award situations, however, the judge may make an appropriate adjustment to account for the prevailing party's limited success."  *Reem Prop., LLC v. Engleby*, 251 F. Supp. 3d 274, 279 (D. Mass. 2017) (quoting *Giuffrida v. High Country Inv., Inc.*, 73 Mass. App. Ct. 225, 244 (2008)).

## III.   Analysis

The Bransford defendants have filed a special motion to dismiss pursuant to Mass. Gen. Laws ch. 184, § 15(c), asserting that (1) Aero lacks the authority to maintain an action in the Commonwealth, (2) the statute of frauds bars the claims, and (3) the subordinate mortgage is not a separate indebtedness from the first mortgage.  They also assert that those grounds are material facts that are improperly omitted from Aero's complaint.  Because the Court determines that plaintiff lacks the capacity to maintain an action in the Commonwealth, it will not address the remaining issues.

The capacity of a foreign limited liability company to sue or be sued is determined "by the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3).  In Massachusetts, foreign LLCs doing business in the Commonwealth are required to register with the Secretary of the Commonwealth.  Mass. Gen. L. ch. 156C § 54.  If an LLC doing business in the Commonwealth fails to register, "no action shall be maintained or recovery had by the foreign

limited liability company in any of the courts of the commonwealth as long as such failure continues." *Id.*

However, there are two exceptions to Rule 17(b)(3):  (A) "[A] partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws" and (B) "28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court."  Fed. R. Civ. P. 17(b)(3).

Neither exception is applicable here.  First, the exception in Rule 17(b)(3)(A) does not apply, even if a limited liability company is considered an unincorporated association.[2]  A "substantive right" under Rule 17(b)(3)(A) is a federal right.  *See, e.g.*, *Day v. Avery*, 548 F.2d 1018, 1023 n.11 (D.C. Cir. 1976); *Lundquist v. Univ. of S.D. Sanford Sch. of Med.*, 705 F.3d 378 (8th Cir. 2013).  Federal courts applying state statutes similar to ch. 156C § 54—sometimes called "door-closing" statutes—consider their application in light of the grant of jurisdiction. *See, e.g.*, *Joe Hand Promotions, Inc. v. Mooney's Pub Inc.*, 2014 WL 4748272, at *3 (C.D. Ill. Sept. 24, 2014); *American Civ. Constr., LLC v. Fort Myer Constr. Corp.*, 246 F. Supp. 3d 309, 316-18 (D.D.C. 2017).  For example, in a state with a door-closing statute, an action based on diversity jurisdiction may not be maintained if it could not be maintained in state court, while those based on federal-question jurisdiction or bankruptcy may be heard in federal court.  *See*

---

[2] *See* Mass. Gen. Laws Ann. ch. 156D, § 2.01 Comment ("'Person' is defined in § 1.40 to include both individuals and entities, and 'entity' is defined in that section to include corporations, unincorporated associations, including limited liability companies, partnerships, including registered limited liability partnerships, trusts, estates, and governments."); *but see Committee for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 820 (9th Cir. 1996) ("For purposes of Rule 17(b)(1), the determination of what constitutes an 'unincorporated association' is a question of federal law."); *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 77 F. Supp. 2d 71, 76-78 (D.D.C. 1999), *aff'd sub nom. E.E.O.C. v. St. Francis Xavier Sch.*, 254 F.3d 315 (D.C. Cir. 2000) (collecting cases concerning the definition of "unincorporated association" under Rule 17(b)(1)).

*Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) ("[W]here in such [diversity] cases one

is barred from recovery in the state court, he should likewise be barred in the federal court.");

*American Guar. Ins. Co. v. Asbestos Control, Inc.*, 785 F. Supp. 65, 66-67 (M.D. Pa. 1992)

("Although the language of 15 Pa.C.S.A. § 4141(a) refers only to the courts of this

Commonwealth, by definition, the state courts of Pennsylvania, the United States Supreme Court

has held that under the policy adopted in *Erie* . . . such statutes operate to limit access to the

federal courts in [diversity] actions"); *In re Leeds Homes, Inc.*, 332 F.2d 648, 650 (6th Cir. 1964)

(holding that a claim could not be dismissed in a bankruptcy court on the ground that the creditor

was a non-qualifying foreign corporation); *Joe Hand Promotions*, 2014 WL 4748272, at *3

(finding that a 'door-closing' statute inapplicable where the court had federal question

jurisdiction); *see also RehabCare Grp. E., Inc. v. Camelot Terrace, Inc.*, 2010 WL 5174369, at

*4 (N.D. Ill. Dec. 15, 2010) (collecting cases).

 This case is in federal court because defendant McDonough filed for removal under 28

U.S.C. § 1442(a)(1) as an officer of the United States and under 28 U.S.C. § 1444 for foreclosure

actions against the United States.[3]  Neither basis for federal jurisdiction is grounded in an

"unincorporated association . . . [suing] in its common name to enforce a substantive right

existing under the United States Constitution or laws."  Plaintiff did not sue under the United

States Constitution or federal law.  Thus, it does not fall within the first exception to Rule

17(b)(3)(A).

---

[3] When a federal party removes an action under § 1442(a)(1), the federal court assumes jurisdiction over all the claims and parties in the case regardless of whether the federal court could have assumed original jurisdiction over the suit.  However, if the federal claim drops out of the case, the district courts have discretion to decline to exercise continued jurisdiction over the state-law claims.  *See D.C. v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132-33 (D.C. Cir. 1985); *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984).  Remanding to state court might be particularly appropriate where there are complex questions of purely local law, or where the federal party is eliminated before substantial proceedings on the merits.  *See Merit Sys. Prot. Bd.*, 762 F.2d at 133.  Thus, this case presents the possibility of remand back to a state court in which plaintiff lacks the ability to maintain the action.

Furthermore, the second exception in Rule 17(b)(3)(B) plainly does not apply.  The rule provides that 28 U.S.C. §§ 754 and 959(a) "govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court."  Fed. R. Civ. Pro. 17(b)(3)(B). No receiver has been appointed here.

Because neither exception applies, Rule 17(b)(3) directs that Aero's capacity to sue or be sued must be determined "by the law of the state where the court is located," which is Massachusetts.  Thus, if Aero is found to be doing business in the Commonwealth and has failed to register with the Secretary of the Commonwealth, it may not maintain this action as long as that failure continues.  *See, e.g.*, *Cottone v. Cedar Lake, LLC*, 2005 WL 1009447, at *3 (Mass. Super. 2005), *aff'd*, 67 Mass. App. Ct. 464, (2006) ("In the instant case, the plain language of Section 54 unambiguously restricts an unregistered foreign LLC from maintaining an action or recovery only in '*the courts* of the commonwealth'"); *Accutrax, LLC v. Finnegan Henderson Farabow Garrett & Dunner, LLP*, 2017 WL 7790200, at *3 n.1 (Mass. Super. 2017) (finding an LLC's registration prior to filing a first amended complaint ended the argument for dismissal on that basis); *Hearn v. Saba*, 2021 WL 2459351, at *4 (Mass. Super. 2021) ("It appears that A Phab and ARB are foreign limited liability companies that would have an obligation to register if they were 'doing business' in Massachusetts" but finding the LLCs were not transacting business).

Defendants contend that Aero is doing business in the Commonwealth because it holds mortgages on Massachusetts property.  (Mot. at 5-6).  For the purposes of ch. 156C § 54(a), transacting business includes "the ownership or leasing of real estate in the commonwealth; . . . or engaging in any other activity requiring the performance of labor."  Mass. Gen. Laws ch. 156D § 15.01(b); *see id.* ch. 156C, § 48 ("A foreign limited liability company shall be considered

to be doing business in the commonwealth for the purpose of this section if it would be considered to be doing business in the commonwealth for the purpose of Part 15 of subdivision A of chapter 156D."). Those included activities are limited by certain safe harbors, defined in ch. 156D § 15.01(c). In 2004, Massachusetts eliminated the safe harbors for "creating or acquiring indebtedness, mortgages, and security interests in real or personal property" and "securing or collecting debts or enforcing mortgages and security interests in property securing the debts." *See* 2004 Mass. Acts. 758, Sess. L. 2004 ch. 178 § 40.

The Jacobson Affidavit, which the Court may consider on a special motion to dismiss, asserts that Aero holds or has held at least six mortgages in Suffolk County and at least five mortgages in Middlesex County. Mass. Gen. Laws ch. 184, § 15(c). (Jacobson Aff. ¶¶ 2-3). Those assertions lend support to the finding that Aero is "doing business" in the Commonwealth such that it is required to register, either because mortgages constitute owning real estate, as defendants contend, or because their activities require the performance of labor and do not fall under a safe harbor. *See Bank of N.Y. Mellon Corp. v. Wain*, 2012 WL 5475849, at *4-5 (Mass. Land Ct. Nov. 9, 2012), *aff'd on other grounds*, 85 Mass. App. Ct. 498 (2014) (finding plaintiff is transacting business in the Commonwealth where plaintiff "is clearly engaged in the business of holding and/or investing in residential real estate mortgages."); *see also Bank of Am., N.A. v. Casey*, 474 Mass. 556, 561 n.10 (2016); *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 575-76 (2012); Michael Pill, 28 Mass. Prac., Real Estate Law § 9:2 (4th ed.). The Jacobson Affidavit also asserts that Aero has not registered with the Massachusetts Secretary of the Commonwealth based on a records search of the Massachusetts Corporations Division. (Jacobson Aff. ¶¶ 4-5).

Aero neither confirms nor denies that it is doing business in the Commonwealth; instead,

it asserts that whether it is registered is irrelevant.  (Opp. at 6-8).  It contends that the District Court is not a "court of the commonwealth," meaning Mass. Gen. Laws ch. 156C § 54(a) does not apply, and that a Massachusetts statute should not be read to deprive a federal court of jurisdiction.  (*Id.* at 6-7).

That argument, however, conflates two distinct concepts:  capacity to sue and jurisdiction.  *See* WRIGHT AND MILLER, 6A FED. PRAC. & PROC. CIV. § 1559 (3d ed.); *Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 50 (9th Cir. 1972) ("The question of a litigant's capacity or right to sue or to be sued generally does not affect the subject matter jurisdiction of the district court."); *Maryland People's Counsel v. Federal Energy Regulatory Comm'n*, 760 F.2d 318, 319 (D.C. Cir. 1985) (Scalia, J.) ("[T]he question of [a party's capacity to sue] under state law does not go to our jurisdiction."); *but see Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 n.2 (11th Cir. 2019) (collecting cases).  Thus, even if a state statute may not be read to deprive a federal court of jurisdiction, a state statute may nonetheless deprive a litigant of capacity to sue.

Aero further relies on *BoylstonD3 LLC v. Galvin*, 496 F. Supp. 3d 692 (D. Mass. 2020), where the court considered whether ch. 156C § 54(a) was unconstitutional.  The court implied that ch. 156C § 54 applied only in state courts.  *Id.* at 698.  However, that conclusion does not support Aero's argument, because it is Rule 17(b), not ch. 156C § 54(a), that determines whether plaintiff has the capacity to sue in federal court.[4]

The counterclaims asserted in this case raise another possible avenue to capacity to sue. Under Mass. Gen. Laws ch. 156C, § 54, "[t]he failure of a foreign limited liability company to

---

[4] Furthermore, as the *BoylstonD3 LLC* court found, "the imposition fees to compensate for court access seldom violate due process."  *Id.* at 697 (citing *United States v. Kras*, 409 U.S. 434, 443-46 (1973)).

register with the state secretary shall not prevent the foreign limited liability company from defending any action, suit or proceeding in any of the courts of the commonwealth."  There is some support that counterclaims place Aero in the position of a counter-defendant, sufficient to consider it to be defending in this action.  *See Bank of New York Mellon Corp.*, 2012 WL 5475849, at *5 ("Even if Plaintiff failed to file a certificate with the secretary of state, Plaintiff is not prohibited from defending its legal rights in this court.").

However, important distinctions make that case inapposite.  Aero is not a national bank.  *Id.* at *5 n.5.  Furthermore, at this stage, this order addresses Aero's motions and the special motion to dismiss, rather than a motion for summary judgment.  *Id.* at *1.  Counterclaims are not at issue in this phase of the proceeding, and therefore their existence does not lend Aero the capacity to sue that it would not have otherwise.  Aero is not being "prevent[ed]" from defending itself in an action, suit or proceeding in a court of the commonwealth.  Finally, the "decisions of the Land Court, like those of [the Superior] Court and of other departments of the Trial Court (as well as the federal courts on matters of state law), have neither binding effect nor precedential value."  *Commonwealth v. Bank of Am., N.A.*, 2012 WL 6062747, at *10 (Mass. Super. Dec. 3, 2012). "The special motion to dismiss shall be granted if the court finds that the action or claim is frivolous because . . . (3) the action or claim is subject to dismissal based on a valid legal defense such as the statute of frauds."  Mass. Gen. Laws Ann. ch. 184, § 15(c).

Finally, it should be noted that ch. 156, § 54 is not an absolute bar to the assertion of legal rights in the courts of the Commonwealth.  If an LLC doing business in the Commonwealth seeks to assert its legal rights in the state courts, it simply has to register to do business.  That is hardly an impediment of constitutional dimensions.

In short, defendants have provided sufficient and uncontradicted evidence that Aero is

transacting business in the Commonwealth and has not registered with the state secretary.  The court cannot maintain its action.

**IV.**     **<u>Conclusion</u>**

For the foregoing reasons, defendants' special motion to dismiss is GRANTED. Plaintiff's Motion for Endorsement of *Lis Pendens* and Memorandum and Findings of *Lis Pendens* are DENIED.

**So Ordered.**

<div style="margin-left: 40%;">

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
</div>

Dated:  January 4, 2024                    Chief Judge, United States District Court